Ulysses MALDONADO (95–
A–5893), Petitioner,

v.

Christopher ARTUZ, Superintendent
of Greenhaven Correctional
Facility, Respondent.

Nos. 00–CV–2265 (JBW), 03–
MISC–0066 (JBW).

United States District Court,
E.D. New York.

Aug. 4, 2003.

Randall D. Unger, Randall D. Unger, Attorney at Law, Bayside, NY, for Petitioner.

Ruth E. Ross, The Office of the District Attorney, Kings County, Brooklyn, NY, for Respondent.

## JUDGMENT & ORDER

WEINSTEIN, Senior District Judge.

A hearing was held in this matter. Petitioner was present by telephone and his counsel was present in person.

The petition for a writ of habeas corpus is dismissed as time-barred and, in the alternative, denied on the merits for the reasons stated orally on the record. This memorandum briefly addresses both the timeliness issue and the merits of petitioner's claims.

## I. Facts and Procedural History

Petitioner was tried on charges relating to a homicide that occurred during the robbery of a jewelry store. Evidence at trial established petitioner and two accomplices entered the store and smashed glass in the jewelry cases. When the store manager heard a shout that men with guns had entered the store, he picked up his licensed handgun from the back office of the store and headed out to the sales area. A gunfight ensued, leaving the store manager's brother partially paralyzed and unable to walk, and leaving his father dead.

Petitioner's three accomplices were arrested within two weeks of the crime. Petitioner eluded detection for over eighteen months, hiding out in his sister's apartment and emerging only at night. After he was apprehended and arrested he made a full statement to detectives admitting his role in the robbery:

I am glad it is over, I am tired of running. I can't even go out during the daytime and my mother ... had been trying to get me to give it up for a long time. My main concern was just to get out of the jewelry store. The dead guy fell right on top of me. That is when I yelled to Ruben to shoot out the door because I tried to crash through the door to get out. I didn't shoot anyone, but I was just down for the robbery. My job was just to steal everything from off the counter. The clean-up guy.

Everything went wrong. Marcus shot out the door and I just ran. I ran back

to the projects, and I've been running ever since.

Trial Tr. at 525–26.

Petitioner was convicted of second degree murder (felony murder) and first degree assault. He was sentenced to 25 years to life in prison.

Petitioner's conviction was affirmed by the Appellate Division. Leave to appeal was denied. No collateral proceedings were initiated.

In the instant petition for a writ of habeas corpus, petitioner makes the same single claim that he raised on direct appeal: that his trial counsel was ineffective for "prevailing upon him to withdraw his request to call two co-perpetrators as witnesses."

## II. AEDPA

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was "adjudicated on the merits" in state court only if it concludes that the adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). *See Price v. Vincent*, —— U.S. ——, —— ——, 123 S.Ct. 1848, 155 L.Ed.2d 877, 885–86 (2003).

An "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim." *Sellan v. Kuhlman*, 261 F.3d 303, 313 (2d Cir.2001) (quoting *Aycox v. Lytle*, 196 F.3d 1174, 1178 (10th Cir.1999)). Under the "contrary to" clause, "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that

reached by [the Supreme Court] on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (O'Connor, J., concurring and writing for the majority in this part). Under the "unreasonable application" clause, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413, 120 S.Ct. 1495. "[F]ederal law, as determined by the Supreme Court, may as much be a generalized standard that must be followed, as a bright-line rule designed to effectuate such a standard in a particular context." *Overton v. Newton*, 295 F.3d 270, 278 (2d Cir.2002). Determination of factual issues made by a state court "shall be presumed to be correct," and the applicant "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## III. Limitations Period

■ Congress has set a one-year period of limitations for the filing of an application for a writ of habeas corpus by a person in custody pursuant to a state court judgment. *See* 28 U.S.C. § 2244(d)(1). This limitations period ordinarily begins to run on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." *Id.* § 2244(d)(1)(A). A conviction becomes final for habeas purposes when the ninety-day period for filing a petition for a writ of certiorari to the United States Supreme Court has expired. *See McKinney v. Artuz*, 326 F.3d 87, 96 (2d Cir.2003); *see also* Sup.Ct. R. 13.

"Equitable tolling ... is only appropriate in 'rare and exceptional circumstances.' To merit application of equitable tolling, the petitioner must demonstrate that he acted with 'reasonable diligence' during the period he wishes to have tolled, but that despite his efforts, extraordinary circumstances 'beyond his control' prevented successful filing during that time." *Smaldone v. Senkowski,* 273 F.3d 133, 138 (2d Cir.2001).

## IV. Exhaustion

In the past, a state prisoner's federal habeas petition had to be dismissed if the prisoner did not exhaust available state remedies as to any of his federal claims. *See Rose v. Lundy,* 455 U.S. 509, 522, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). "This exhaustion requirement is ... grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights." *Coleman v. Thompson,* 501 U.S. 722, 731, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). The exhaustion requirement requires the petitioner to have presented to the state court "both the factual and legal premises of the claim he asserts in federal court." *Daye v. Attorney General,* 696 F.2d 186, 191 (2d Cir.1982) (en banc).

■ Pursuant to AEDPA, a district court may now, in its discretion, *deny* on the merits habeas petitions containing unexhausted claims—so-called "mixed petitions." *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state."). In addition, the state may waive the exhaustion requirement, but a "State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement." *Id.* § 2254(b)(3); *see also Ramos v. Keane,* No. 98 CIV. 1604, 2000 WL 12142, at *4 (S.D.N.Y.2000) (state's failure to raise exhaustion requirement does not waive the issue).

## V. Procedural Default

■ A federal habeas court may not review a state prisoner's federal claims if those claims were defaulted in state court pursuant to an independent and adequate state procedural rule, "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750, 111 S.Ct. 2546.

## VI. Ineffective Assistance of Counsel

The Counsel Clause of the Sixth Amendment provides that a criminal defendant "shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This right to counsel is "the right to *effective* assistance of counsel." *McMann v. Richardson,* 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970) (emphasis added). The Supreme Court has explained that in giving meaning to this requirement we must be guided by its purpose—"to ensure a fair trial"—and that therefore the "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to prevail on a Sixth Amendment claim, a petitioner must prove both that counsel's representation "fell below an objective standard of reasonableness" measured under "prevailing professional

norms," *id.* at 688, 104 S.Ct. 2052, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694, 104 S.Ct. 2052. *See also Wiggins v. Smith,* 539 U.S. ——, ——–——, 123 S.Ct. 2527, 2534–36 (2003); *United States v. Eyman,* 313 F.3d 741, 743 (2d Cir.2002). A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

■ The performance and prejudice prongs of *Strickland* may be addressed in either order, and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." *Id.* at 697, 104 S.Ct. 2052. In evaluating the prejudice suffered by a petitioner as a result of counsel's deficient performance, the court looks to the "cumulative weight of error" in order to determine whether the prejudice "reache[s] the constitutional threshold." *Lindstadt v. Keane,* 239 F.3d 191, 202 (2d Cir.2001). The court must also keep in mind that "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Strickland,* 466 U.S. at 696, 104 S.Ct. 2052. "The result of a [criminal] proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." *Purdy v. Zeldes,* 337 F.3d 253, 260 (2d Cir.2003) (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052). Ineffective assistance may be demonstrated where counsel performs competently in some respects but not in others. *See Eze v. Senkowski,* 321 F.3d 110, 112 (2d Cir.2003).

■ As a general matter, strategic choices made by counsel after a thorough investigation of the facts and law are "vir-tually unchallengeable," though strategic choices "made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland,* 466 U.S. at 690–91, 104 S.Ct. 2052. Counsel, in other words, "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.* at 691, 104 S.Ct. 2052. Where counsel fails to make a reasonable investigation that is reasonably necessary to the defense, a court must conclude that the decision not to call an expert cannot have been based on strategic considerations and will thus be subject to review under *Strickland's* prejudice prong. *See Pavel v. Hollins,* 261 F.3d 210, 223 (2d Cir.2001) (counsel ineffective in a child sexual abuse case where his failure to call a medical expert was based on an insufficient investigation); *Lindstadt,* 239 F.3d at 201 (same).

There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052.

## VII. Application

### A. Time Bar

■ Petitioner was convicted on August 4, 1995, of second degree murder. His appeal to the Appellate Division was denied on February 17, 1998. Leave to appeal to the New York Court of Appeals was denied on May 12, 1998. Because he did not seek a writ of certiorari before the United States Supreme Court, Petitioner's conviction became final 90 days later, on August 10, 1998. Absent statutory or equitable tolling, the deadline for filing his petition for a writ of habeas corpus was therefore August 10, 1999.

Petitioner's petition was received by the pro se office of the Southern District of New York on February 16, 2000. It was filed in the Eastern District on April 18, 2000. The petition would appear on its face to be clearly out of time

However, Petitioner dated his petition August 1, 1999, six and a half months prior to its receipt at the court. The petition is not notarized or witnessed. He now claims that he in fact mailed his petition on August 1, 1999, but that it was returned to him on November 11, 1999, because he had failed to include the proper fee and proper number of copies. In support of this claim, Petitioner has presented the court with an unaddressed, undated form letter from the Southern District stating that an unnamed person's habeas application was being returned for failure to provide the proper filing fee and number of copies. The original mailing envelope has not been supplied to the court.

This court requested the clerk of court of the Southern District of New York to explain the docketing procedures used in that district in 1999, and to inform this court of any record information that might illuminate when the instant petition was received in the Southern District and what happened to it. This court takes judicial notice of the facts contained in the resulting memorandum drafted by Senior Staff Attorney Natalie J. Sobchak, a copy of which was presented to both parties.

As explained in Ms. Sobchak's memorandum, an application for a writ of habeas corpus by Petitioner was received by the pro se office of the Southern District on October 28, 1999. It was returned to petitioner on November 8, 1999, for failure to submit a filing fee or application to proceed in forma pauperis. The envelope in which the Southern District received petitioner's papers (and which would have been stamped "Received—Pro Se Office" with the date) was returned to Petitioner with his application.

It is wisely no longer the practice in the Southern District to return defective pro se petitions without filing them. On January 10, 2000, then-Chief Judge Thomas P. Griesa ordered all pro se petitions for writs of habeas corpus to be deemed to include an application to proceed *in forma pauperis*, and directing the clerk of court to file all such petitions as if *in forma pauperis* status had been granted without prepayment of fees.

For present purposes, the import of Ms. Sobchak's memo is to establish that petitioner did seek to file an application for a writ of habeas corpus in the Southern District prior to April 18, 2000; that the application, even though dated by petitioner August 1, 1999, was in fact received by the Southern District on October 28, 1999; and that the application was, as petitioner contends, returned to him on November 8, 1999.

Acknowledging all the above information, it seems highly likely that petitioner did not timely file his application. It strains credulity that petitioner actually mailed his application on August 1, 1999, and that the Southern District did not receive it for almost two months. A hearing was held to afford Petitioner the opportunity to convince this court, even in light of the paucity of evidence supporting his claim, that his petition was timely filed. He has failed to do so.

As noted above, Petitioner's application, though dated August 1, 1999, is neither notarized nor witnessed. He has supplied no evidence, aside from his own contentions, that he actually mailed his application—or delivered the application to prison authorities for mailing—at that time.

Having heard petitioner, this court is of the opinion that his claim that he mailed

the petition on August 1, 1999, is not credible. The petition is time-barred.

### B. Merits

 At any rate, petitioner's claim that his trial counsel was ineffective for "prevailing upon him to withdraw his request to call two co-perpetrators as witnesses" is without merit. This claim is exhausted, was addressed by the state courts on the merits, and was not procedurally defaulted. If the petition were timely and review were proper, it would proceed under the deferential standards of AEDPA.

Petitioner argues that counsel was ineffective because he convinced petitioner not to call as witnesses two accomplices who had already pled guilty to the crime, had identified petitioner as a participant, and had agreed to testify on behalf of the prosecution if called as witnesses. The Appellate Division rejected this claim, stating:

> There is no merit to the defendant's claim that his trial attorney's decision not to call as defense witnesses two accomplices who had already pleaded guilty to the crime with which the defendant was also charged constituted ineffective assistance of counsel. The accomplices had identified the defendant as an armed participant in the shootings and had agreed, if called upon, to testify as prosecution witnesses. Based on the totality of the circumstances, it is clear that the attorney provided meaningful representation

*People v. Maldonado*, 247 A.D.2d 555, 668 N.Y.S.2d 916, 916 (2d Dep't 1998). This conclusion is reasonable. Petitioner's trial counsel made a strategic, thoroughly informed and reasonable decision not to call these witnesses and, moreover, did so after conferring with petitioner and receiving his acquiescence. *See* Trial Tr. at 709–19. Habeas relief is not warranted on this claim.

### VIII. Conclusion

The petition for a writ of habeas corpus is dismissed as time-barred and, in the alternative, denied on the merits.

No certificate of appealability is granted, petitioner having made no substantial showing of the denial of a constitutional right. **Petitioner has a right to seek a certificate of appealability from the Court of Appeals for the Second Circuit.** *See* 28 U.S.C. § 2253; *Miller–El v. Cockrell*, 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).

SO ORDERED.