Jorge L. LINARES, Petitioner–Appellant,

v.

Charles GREINER, Superintendent, Respondent–Appellee.

Docket No. 03–2799.

United States Court of Appeals, Second Circuit.

Jan. 26, 2005.

Jeremy G. Epstein, Shearman & Sterling LLP (Elizabeth R. Weiss Nicole J. Coward, and Bryce A. Edwards, of counsel), New York, NY, for Petitioner–Appellant.

Thomas C. Costello, Assistant District Attorney for Suffolk County (Thomas J. Spota, District Attorney, on the brief), Riverhead, NY, for Respondent–Appellee.

PRESENT: LEVAL, STRAUB, and KATZMANN, Circuit Judges.

## SUMMARY ORDER

On July 13, 1995, petitioner was arrested by Detective Ronald Rafferty of the Suffolk County Police Department. Petitioner was advised of his constitutional rights and, after a relatively brief interrogation, gave oral and written statements to the police in which he confessed to some of the criminal allegations made against him. Petitioner was indicted on charges of rape, sexual abuse, endangering the welfare of a child, and criminal solicitation.

During his July 13, 1995, interview with petitioner Rafferty took notes. Included in these notes are, in Rafferty's hand, "ESQ Tupan" and the numbers "698–6500." During 1994 petitioner was represented by L. David Toupin, Esq., on domestic matters. Petitioner claims that Rafferty's note was made after petitioner asked to speak to Toupin and before the interrogation that led to petitioner's inculpatory statements.

Petitioner subsequently moved to suppress his inculpatory statements. Before the suppression hearing Rafferty's notes were timely disclosed to petitioner and to petitioner's criminal counsel, James S. Kats, Esq. Rafferty testified at the hearing as the only witness. He asserted that petitioner voluntarily gave his statement and did not ask to speak to an attorney prior to doing so. Kats did not introduce or otherwise make use of Rafferty's notes at the hearing. Kats argued that the statement was coerced. He did not suggest, either by his questions or by argument, that petitioner had asked to speak to an attorney before giving his statement. The motion to suppress was denied in an unpublished decision by Justice Mullen, Supreme Court of New York, Suffolk County, dated February 22, 1996.

Petitioner was tried before a jury in the Supreme Court of New York, Suffolk County. Petitioner's statements were admitted into evidence. During cross-examination of Rafferty counsel for petitioner used Rafferty's notes to challenge Rafferty's assertion that petitioner had waived his right to counsel before giving those statements. Rafferty acknowledged that he wrote "ESQ Tupan" in his notes, but claimed no memory of the circumstances that led him to do so. Rafferty continued to deny that petitioner asked to speak to an attorney. Petitioner also testified at trial and, in addition to denying all charges made against him, claimed that he had asked to speak with Toupin before making his confessions. The jury was charged as to its authority to disregard petitioner's statements if it found that those statements were made in response to interrogation pursued after petitioner invoked his right to counsel.

On April 15, 1996, the jury found petitioner guilty on seven of the nine indicted counts. Judgment was entered against petitioner on charges of rape in the first degree, sexual abuse in the first degree, endangering the welfare of a child, and criminal solicitation in the third degree. Petitioner appealed. Judgment was affirmed by the Appellate Division, Second Department, on October 18, 1999. *See People v. Linares*, 265 A.D.2d 504, 696 N.Y.S.2d 863 (N.Y.App.Div.2d, 1999). Petitioner then submitted to Justice Mullen a *pro se* motion to vacate. That motion was denied in an unpublished opinion dated November 5, 2001. A petition for habeas corpus relief filed in the Eastern District of New York followed. That petition was dismissed in an unpublished decision on October 2, 2003.

In dismissing the petition, the District Court issued a certificate of appealability limited to claims relating to "the statement given by defendant to police." We therefore limit our deliberations to petitioner's Fifth Amendment argument and his claim

that trial counsel's failure to utilize Rafferty's notes at the *Huntley* hearing deprived petitioner of his Sixth Amendment right to counsel.

■ The core of petitioner's Fifth Amendment claim is that his oral and signed confessions were not given voluntarily because they were made in response to interrogation that continued after petitioner asserted his right to counsel. While voluntariness is a mixed determination of fact and law, the real dispute here addresses the purely factual question of whether petitioner asserted his right to counsel on July 13, 1995, prior to interrogation.

We can see no basis for petitioner's claim that his statement should have been suppressed. At the *Huntley* hearing he did not even advance the contention that he asked to consult with counsel before giving the statement. At trial, he so testified, but his testimony was contradicted by Rafferty's account. The state courts were perfectly entitled to find that petitioner's statement was taken in conformity with the requirements of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

■ Though petitioner makes numerous Sixth Amendment arguments we limit our deliberations to those that fall within the scope of those issues certified for appeal by the District Court. Specifically, we consider only those Sixth Amendment claims that relate to the statements given by defendant to police.

*Strickland v. Washington* sets forth a two-pronged test of Sixth Amendment claims alleging incompetence of counsel under which petitioner "must show that counsel's representation fell below an objective standard of reasonableness," 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and "that there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "The *Strickland* standard is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel founder on that standard." *Lindstadt v. Keane*, 239 F.3d 191, 199 (2d Cir.2001).

Petitioner contends that his attorney's failure to utilize Rafferty's notation of Toupin's name and telephone number in seeking to bar the receipt of the statement in evidence constitutes ineffective assistance of counsel. Petitioner cites two distinct instances of allegedly ineffective assistance: 1) his trial attorney's failure at the *Huntley* hearing to cross-examine and argue, on the basis of the notation, that petitioner requested to speak to his attorney before giving his statements, and 2) the lawyer's failure, when he discovered the possible significance of the notation, to move to reopen the *Huntley* hearing so as to block the receipt of the statement in evidence.

As for the first episode, we cannot say that the New York courts made unreasonable application of clear Supreme Court law in finding that the attorney's conduct did not fall below standards of reasonableness. There is no showing that petitioner's counsel during the *Huntley* hearing had been told by his client or indeed had any reason to believe, that petitioner had requested to speak to counsel. Reasonable standards did not require counsel presciently to anticipate what petitioner would say when he became aware of the notation in Rafferty's notes. In view of these considerations and the time pressure on counsel at the hearing, we cannot say his performance did not comply with reasonable objective standards.

As for the second episode of alleged ineffective assistance-counsel's failure to seek to reopen the *Huntley* hearing prior to the receipt of petitioner's statement-we see no reasonable likelihood that counsel's doing so would have resulted in a different outcome in petitioner's trial. Had such an application been made, there is little likelihood it would have been granted. Had the application been supported by Rafferty's notation, without an affidavit of petitioner's asserting that he asked to speak to counsel, the judge would have had no reason to grant it. The notation by itself does not suggest that petitioner asked to speak to his attorney prior to giving his statement. It implies only that at some point during their interview, petitioner advised Rafferty of Toupin's name and telephone number. Such advice did not necessarily occur prior to the giving of the statement and was not necessarily inconsistent with his agreeing to give the statement without first consulting the attorney.

If the application had been accompanied by petitioner's affidavit asserting that he asked to speak to Toupin before giving his statements, it would have appeared to be a recent fabrication, motivated by the discovery of Rafferty's notation. In view of the fact that neither petitioner nor his attorney ever suggested during the *Huntley* hearing that he asked to speak to counsel, the trial judge would probably have found the new assertion highly suspicious. Since the procedure envisioned by the trial judge protected petitioner's *Miranda* rights to the extent of allowing him to put his claim of *Miranda* violations to the jury and instructing the jury to disregard the statement if it found he had requested counsel, we think the court would have been highly unlikely to stay the trial and reopen the *Huntley* hearing to allow the assertion of a newly voiced and probably fabricated claim. But even if the court did reopen the *Huntley* hearing,

and in that context heard the conflicting testimony given at trial by petitioner and Rafferty, the judge would have been most unlikely to reverse the ruling previously reached.

We conclude that the courts of New York did not unreasonably apply Supreme Court precedent in finding that petitioner failed to satisfy the standards of *Strickland*.

We have considered petitioner's remaining arguments on appeal and find that each of them is either outside the scope of the issues certified for appeal or without merit. For the foregoing reasons, the decision of the District Court dismissing the petition is AFFIRMED.