**Johann GARCIA, Petitioner,**

v.

**ATTORNEY GENERAL OF the State of NEW YORK, Respondent.**

**No. 06 Civ. 13707.**

United States District Court, S.D. New York.

March 12, 2008.

---

1. As there appears to be diversity of citizenship, no federal claim is required to keep plaintiff's lawsuit in this court.

Goldstein & Weinstein, by David J. Goldstein, Esq., Bronx, NY, for Petitioner.

Robert T. Johnson, Esq., District Attorney, Bronx County, by Alexis Pimentel, Esq., Bronx, NY, for Respondent.

## OPINION

SWEET, District Judge.

Johann Garcia ("Garcia" or the "Petitioner") has filed a petition for habeas corpus, pursuant to 28 U.S.C. § 2254, based upon a claim of ineffective assistance of counsel. For the reasons set forth below, the petition is denied.

### Prior Proceedings

The Petitioner filed his petition on December 4, 2006. The State filed its opposition and the matter was marked fully submitted on March 23, 2007.

### The State's Case

During the evening of November 20, 1997, while driving in a van, Gilbert Hernandez ("Hernandez"), Rafael Arce ("Arce"), and Luis Silva ("Silva") were looking for Petitioner to recover some money Petitioner owed Silva. Silva saw Petitioner and asked him to step inside the van. Once inside the van, Silva requested that Petitioner pay him. Petitioner said that he was unable to repay him at that time and an argument ensued. Petitioner exited the van, and told Silva that he would "beep" him later that day when he had the money.

Later that evening, Hernandez, Arce, and Silva received a "beep" from Petitioner, and were instructed to meet him at a building on East 156th Street in the Bronx. Before Silva and the others arrived, Petitioner told Lenny Baez ("Baez") that he owed Silva money. Petitioner informed Baez that he had "beeped" Silva to pay him, but that he had no intention of doing so. Petitioner then gave Baez a glimpse of a black automatic gun.

Arce, who was driving the van, double parked in front of the building. Petitioner approached the front passenger side of the van, where Silva sat, pulled a black auto-

matic gun out of his pocket, and shot at Silva. Realizing that Silva was wounded, Arce drove off. Petitioner continued shooting at the van.

After driving approximately five minutes, Arce sought help from a police officer, who flagged down a passing ambulance. Silva later died at Lincoln Hospital from a gunshot wound to the left chest, which perforated his left lung and pulmonary artery.

### The Defense

Petitioner claimed that Silva approached him to help him sell marijuana. Petitioner testified that he sold drugs for Silva but was unable to pay him back. Petitioner alleged that on November 20, 1997, while on 175th Street and Broadway, he got into a van with Silva, Arce, Hernandez, and David, a close friend of his. According to Petitioner, Silva said that he wanted his money, punched Petitioner and David, and then threatened to throw them out of the van while it was moving.

Petitioner testified that he exited the van, told Silva that he did not want any problems, and would get him the money. Petitioner claimed that he borrowed $200 from David's aunt, and that he told his aunt to bring him $200 at East 156th Street in the Bronx. Petitioner stated that he beeped Arce twice and instructed Silva to go to 432 East 156th Street to pick up the money.

According to Petitioner, he waited outside of the building with some friends. Silva arrived in the van and parked in front of the building. Petitioner stated that as he approached the van, Silva immediately asked for his money. Petitioner claimed that he stood next to the passenger window and told Silva that he did not

have all of it. Petitioner testified that Silva pulled out a gun with his right hand. Petitioner alleged that he wrestled the gun from Silva's hand, but when Silva "stood up a little bit," Petitioner got "nervous" and fired approximately four or five shots at the van. Petitioner then threw the gun back into the van and ran.

Marilyn Sanchez, Petitioner's sister, and Maria and Rafael Fernandez, Petitioner's cousins, all testified that Silva was left-handed.

On December 15, 1999, a judgment was rendered in the Supreme Court of Bronx County, convicting Petitioner, after a jury trial, of Murder in the Second Degree (N.Y. Penal Law § 125.25(1)) and Criminal Possession of a Weapon in the Second Degree (N.Y. Penal Law § 265.03) and sentencing him to concurrent terms of imprisonment of 25 years to life and 7–1/2 to 15 years, respectively.

### Post–Trial Proceedings

In motion papers dated March 22, 2002, Petitioner, through counsel, David J. Goldstein, Esq., moved before the Supreme Court of Bronx County, pursuant to N.Y. Crim. Proc. Law (hereinafter "NYCPL") § 440.10(1)(h), to vacate the judgment of conviction, claiming that his trial counsel, Herman Graber, Esq., was ineffective.[1] Petitioner alleged that trial counsel: (1) spent very little time with him preparing for trial, (2) never advised him that Petitioner's version of events was "at loggerheads" with the ballistics evidence, and (3) inappropriately consented to the State's request that the jury be re-instructed on the issue of justification. *See* Petr.'s NYCPL § 440.10 Mot.; Resp't Affirmation in Opp.

---

1. The New York State Office of Court Administration indicates that Mr. Graber is now deceased.

On June 3, 2003, the Honorable Steven Lloyd Barrett, an Acting Justice of the Supreme Court, Bronx County, denied Petitioner's motion pursuant to NYCPL § 440.10(2)(b), as "sufficient facts appear[ed] on the record to allow for adequate appellate review."[2] The court stated that even if it were to consider the issue on the merits, it "would find that the reinstruction delivered to the jury was appropriate, and, that counsel's consent in this matter did not constitute ineffective assistance." *See People v. Garcia*, No. 1045/98, slip op. at 7 (N.Y. Sup. Ct. June 3, 2003). According to the State, the Clerk's Office of the Appellate Division, First Department, has confirmed that Petitioner never filed a NYCPL § 460.15 motion seeking leave to appeal the denial of the NYCPL § 440.10 motion.

In March 2005, Petitioner, through his assigned appellate counsel, filed a brief in the Appellate Division, First Department, raising the following claims: 1) The court's supplemental instruction on justification was erroneous, as it significantly reduced the State's burden of proof by removing the issue of Garcia's subjective beliefs from the jury's consideration, and denied him a fair trial; 2) Trial counsel's inexplicable and inexcusable failure to object to the supplemental justification instruction denied Garcia his constitutional right to the effective assistance of counsel and due process of law; and 3) The sentence imposed, twenty-five years to life, was harsh and excessive and should be reduced in the interests of justice.

In September 2005, Petitioner, through his assigned appellate counsel filed a reply brief in the Appellate Division, First Department, reasserting the claim that the court's supplemental charge erroneously eliminated the subjective component of the justification defense and thus denied Garcia a fair trial.

On September 20, 2005, the Appellate Division, First Department, unanimously affirmed Petitioner's conviction. *People v. Garcia*, 21 A.D.3d 813, 800 N.Y.S.2d 842 (2005). The Court held that:

> Defendant failed to preserve his challenge to the court's justification charge and we decline to review it in the interest of justice. Were we to review this claim, we would conclude that the charge fully explained the objective and subjective aspects of the justification defense and that the language challenged by defendant, when viewed in context of the entire charge and the evidence presented at trial, could not have misled the jury as to the People's burden of proof. Similarly, we conclude counsel's failure to object to the language challenged on appeal did not deprive him of effective assistance under either the federal or state standards.

*Id.* (internal citations omitted).

On September 26, 2005, Petitioner sought leave to appeal the decision of the Appellate Division, First Department, before the New York State Court of Appeals.

On December 5, 2005, the Honorable George Bundy Smith, then an Associate Judge of that Court, denied Petitioner's application. *People v. Garcia*, 6 N.Y.3d 753, 810 N.Y.S.2d 421, 843 N.E.2d 1161 (2005).

### Trial Counsel Was Not Constitutionally Ineffective

 Where a petitioner seeks habeas corpus relief, under the Antiterrorism and

---

**2.** NYCPL § 440.10(2)(b) states that "the court must deny a motion to vacate a judgment when ... [t]he judgment is, at the time of the motion, appealable or pending on appeal, and sufficient facts appear on the record with respect to the ground or issue raised upon the motion to permit adequate review thereof upon such an appeal."

Effective Death Penalty Act, 28 U.S.C. § 2254:

> a writ may issue only if ... the state court adjudication resulted in a decision that ... involved an unreasonable application of ... clearly established federal law, as determined by the Supreme Court of the United States.... Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (*quoting* 28 U.S.C. § 2254) (O'Connor, J., concurring, writing for the majority in this part).

In a petition for habeas relief based on a claim of ineffective assistance of counsel, the question as to whether the matter is governed by clearly established federal law is "easily answered because the merits of [such] claim[s] are squarely governed by [the Supreme Court's] holding in *Strickland v. Washington*." *Id.* at 390, 120 S.Ct. 1495; *see also Aparicio v. Artuz*, 269 F.3d 78, 95 (2d Cir.2001). A petitioner is not required to further demonstrate that his particular theory of ineffective assistance of counsel is also clearly established. *Aparicio*, 269 F.3d at 95 n. 8; *Sellan v. Kuhlman*, 261 F.3d 303, 309 (2d Cir.2001). Application of the New York State standard set forth in *People v. Baldi*, 54 N.Y.2d 137, 444 N.Y.S.2d 893, 429 N.E.2d

400 (1981), is essentially consistent with the *Strickland* standard, so that relief is appropriate only if the governing legal principle was unreasonably applied by the state court. *Lindstadt v. Keane*, 239 F.3d 191, 198 (2d Cir.2001).

 To demonstrate constitutional ineffectiveness, a defendant must first show "that counsel's performance was deficient." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *see also Lockhart v. Fretwell*, 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993); *Lindstadt*, 239 F.3d at 198. To make this determination, the court must decide whether "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052. Counsel's conduct must be judged on facts of the particular case, viewed as of the time of counsel's conduct. *Id.* The reviewing court must make every effort to "eliminate the distorting effects of hindsight" and must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. 2052.

 In addition to showing deficient performance, the defendant must show that the deficient performance prejudiced the defense; it must be shown that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. A reasonable probability is one that "undermine[s] confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052.

 Here, Petitioner cannot establish that 1) counsel's representation fell below an objective standard of reasonableness, and 2) he suffered prejudice as result of trial counsel's performance.

Under New York Penal Law (hereinafter "NYPL") § 35.15(1), an individual is permitted to use force upon another person "when and to the extent he reasonably believes such to be necessary to defend himself or a third person from what he reasonably believes to be the use or imminent use of unlawful physical force by such other person." Deadly force, however, is only justified when the actor "reasonably believes that such other person is using or about to use deadly physical force." NYPL § 35.15(2)(a). The New York Court of Appeals has explained justification as follows:

> To determine whether a defendant's conduct was justified under Penal Law § 35.15, a two–step inquiry is required. The jury must first determine whether defendant *actually believed* that deadly physical force was necessary. If the People fail to meet their burden of proving that defendant *did not* actually believe that the use of deadly physical force was necessary, then the jury must move on to the second step of the inquiry and assess the reasonableness of this belief.
>
> We held in [*People v. Goetz*, 68 N.Y.2d 96, 114–15, 506 N.Y.S.2d 18, 497 N.E.2d 41 (1986)] that Penal Law § 35.15 requires a jury to consider both subjective and objective factors in determining whether a defendant's conduct was reasonable. We stated that "a determination of reasonableness must be based on the 'circumstances' facing a defendant or his 'situation'.... [A] jury should be instructed to consider this type of evidence in weighing the defendant's actions." Evidence of a defendant's "circumstances" includes relevant knowledge that the defendant may have had about the victim, the physical attributes of all those involved in the incident, and any prior experiences that the defendant may have had "which

could provide a reasonable basis for a belief that another person's intentions were to injure or rob him or that the use of deadly force was necessary."

*People v. Wesley*, 76 N.Y.2d 555, 559, 561 N.Y.S.2d 707, 563 N.E.2d 21 (1990) (emphasis in original) (internal citations omitted).

Here, in its initial charge, the court informed the jury that the State had the burden of proving every element of the crimes charged beyond a reasonable doubt (Tr. 1477–80). The court then instructed the jury that if they found that the State had proven beyond a reasonable doubt the elements of any of the charged crimes, they must, before rendering a guilty verdict, consider whether Petitioner was justified in causing the death of Luis Silva (Tr. 1498–99). That is, when justification is raised, it becomes an element of the crime and the State is required to prove beyond a reasonable doubt that Petitioner was not justified in his actions (Tr. 1514). The court explained that:

> A person may use deadly physical force against another without being liable for the crime of murder or other crime only when that actor reasonably believes that the other person against whom he has directly used deadly physical force is about to use deadly physical force against the actor.
>
> And, furthermore, that the actor reasonably believes that his own use of deadly physical force is necessary to prevent the imminent use of deadly physical force against him.

(Tr. 1515).

The court, after repeating the definition, noted that the law of justification does not authorize a person to use deadly physical force against another person in all circumstances (Tr. 1516). Rather, justification "entails two factual findings," one subjec-

tive and one objective (Tr. 1519). That is, Petitioner himself must believe that deadly physical force is necessary, and it must be established that a reasonable person in the Petitioner's position could have had such a belief (Tr. 1519–20). Furthermore, the court noted that, in assessing the subjective prong:

> It does not matter if the defendant was or may have been mistaken in his belief so long as that belief was honestly held by the defendant and so long as the belief was reasonable.

(Tr. 1521).

The court further instructed the jury that both the objective and the subjective prongs are factual determinations that should be made based on their "evaluation of the precise circumstances that existed at the time that Petitioner shot Silva, and primarily based on [their] assessment of the defendant's testimony as to what it is that he honestly believed" (Tr. 1521–22). The court advised that the jury was to first consider the subjective prong and then the objective prong (Tr. 1522–23).

The court then reiterated that Petitioner was not required to prove that he was justified, but rather, the State was required to prove that defendant was not justified. In order to satisfy that burden, the court noted, the State was required to prove one of five things beyond a reasonable doubt (Tr. 1526):

> Item number one, if the People prove beyond a reasonable doubt that the defendant did not actually and honestly believe in his own mind that deadly physical force was eminently [sic] about to be used against him the People have satisfied their burden of disproving justification. . . .
>
> Item number two, even if defendant did subjectively possess such a belief, if the People have proven beyond a reasonable doubt that it was not reasonable for him

to so believe under the circumstances that deadly physical force was imminently about to be used against him then the People have satisfied their burden of proof.

> Alternatively, item three, if the People have proven beyond a reasonable doubt that the defendant did not actually and honestly belief [sic] that his own use of deadly force was necessary to defend himself from any use of deadly physical force, the People have satisfied their burden of disproving justification.
>
> Alternatively, item four. Even if defendant did subjectively possess that belief, if the People have proven beyond a reasonable doubt that it was not reasonable for him to so believe under the circumstances that his own use of deadly physical force was necessary to defend himself from the use of deadly physical force then the People have satisfied their burden of proof by disproving justification.

(Tr. 1526–28). And, finally, if the State proves that Petitioner knew that he could have retreated, then the State has satisfied its burden of disproving justification (Tr. 1529). Petitioner has conceded that these instructions were proper (Petr.'s Mem. in Supp. at 25).

The prosecutor, during a post-charge conference, requested that court give the jury a sixth justification charge possibility. The prosecutor indicated that all of the previous explanations relied heavily on Petitioner's version of the events, which required the jury to accept Petitioner's story when considering justification. The prosecutor explained that the jury should also be informed that the State could disprove justification beyond reasonable doubt if it was established that Silva never used or threatened use of imminent physical force against Petitioner (Tr. 1535–36).

Defense counsel objected and argued that the prosecutor's request would require the court to marshal evidence, which would be unfair to Petitioner (Tr. 1536).

The trial court indicated that both parties raised valid points and that it saw no grave harm in clarifying the charge. The court then stated:

I am going to advise the jurors that the People will have satisfied their burden of proof of disproving justification beyond a reasonable doubt if they have proven beyond a reasonable doubt that Luis Silva never used or threatened the imminent use of deadly physical force.

(Tr. 1538). Defense counsel indicated that he was concerned that the instruction amounted to a marshaling of evidence (Tr. 1541).

The trial court replied that the instruction did not marshal evidence, but that it made reference to the evidence without discussing the particular evidence (T. 1541). After the court's response, defense counsel withdrew his objection (Tr. 1541–42).

The court then charged the jury that:

If you find that the People have proven beyond a reasonable doubt that Luis Silva never used or threatened to use the imminent use of deadly physical force against defendant ..., then the People have met their burden of disproving justification beyond a reasonable doubt (Tr. 1543).

The charge, as a whole, properly instructed the jury that they should consider Petitioner's conduct, including all the surrounding circumstances, and his testimony, to determine if he reasonably believed that Silva was about to use deadly physical force against him, and that his own use of deadly physical force was necessary, as well as that Petitioner's subjective beliefs were crucial to the jury's determination regarding justification.

The record indicates that the jurors had a difficult time comprehending the justification defense, since they requested additional instruction (Tr. 1615). At no point did the court instruct the jury to disregard its initial instructions or to give greater weight to the supplemental charge than to the rest of the charge. Counsel's decision to withdraw his objection did not deprive Petitioner of effective assistance of counsel.

As noted above, the opinion of the Appellate Division, First Department, states:

Defendant failed to preserve his challenge to the court's justification charge and we decline to review it in the interest of justice. Were we to review this claim, we would conclude that the charge fully explained the objective and subjective aspects of the justification defense, and that the language challenged by defendant, when viewed in context of the entire charge and the evidence presented at trial, could not have misled the jury as to the People's burden of proof.

*Garcia*, 21 A.D.3d at 813, 800 N.Y.S.2d 842 (internal citations omitted). Citing, *inter alia*, *People v. Benevento*, 91 N.Y.2d 708, 674 N.Y.S.2d 629, 697 N.E.2d 584 (1998), and *Strickland*, the court held that "counsel's failure to object to the language challenged on appeal did not deprive him of effective assistance under either the federal or state standards." *Id.*

As the court's charge as a whole was correct, trial counsel was not ineffective for failing to object to the court's supplemental instructions. *See Ramos v. Phillips*, No. 05 Civ. 0023(ARR), 2005 WL 1541046, at *9 (E.D.N.Y. June 30, 2005) ("The failure to object to jury instructions that are legally correct as given does not constitute ineffective assistance of counsel.") (*citing Aparicio v. Artuz*, 269 F.3d

78, 99–100 (2d Cir.2001)). Accordingly, the state court's denial of Petitioner's ineffective assistance claim did not constitute an unreasonable application of *Strickland.*

■ Even assuming that the failure to object to the supplemental instructions was "professionally unreasonable," it would "not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Lynn v. Bliden,* 443 F.3d 238, 247 (2d Cir.2006) (*quoting Lindstadt,* 239 F.3d at 204). "To merit habeas relief, the defendant must show that the deficient performance prejudiced the defense." *Id.* Thus, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.*

■ A reviewing court "must consider the totality of the evidence before the judge or jury." *Lynn,* 443 F.3d at 248 (*quoting Strickland,* 466 U.S. at 695–96, 104 S.Ct. 2052). "[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.* In the end, "a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors." *Id.*

Here, there was evidence that Petitioner had intentionally shot and killed Silva over a debt. Baez testified that Petitioner approached him in the lobby of 432 East 156th Street, explained that he owed someone money, and that he had beeped him, but that he had no intention of paying him. Petitioner then gave Baez a glimpse of a black automatic gun, but Baez refused to help him. Arce and Hernandez asserted that Petitioner approached from the front of the van and began shooting into the passenger side, where Silva was seated.

As the van was under fire, Arce started to drive away.

The damage to the van and the wounds that caused Silva's death were wholly consistent with the testimony that Petitioner's first shots were fired as he approached the front of the van, and that he continued shooting as the van pulled away, disproving Petitioner's justification defense beyond a reasonable doubt. Detectives Weissberger and Mulzac testified that one bullet was found lodged in the dashboard, that there was a bullet hole on the passenger side of the windshield, from which the bullet traveled diagonally to the captain's chair in the middle row on the driver's side, and that the passenger side window, which had been partially open, was shattered. Moreover, Silva suffered a fatal gun shot wound to the left side of his chest, above and inside the right nipple, which perforated his sternum, his left lung, and his left pulmonary artery. He was also shot on the left side of his chest, towards the outside and above his left nipple.

Even without the supplemental instruction, Petitioner's justification defense could have been rejected by the jury, because Petitioner's testimony, taken together with the testimonies of his witnesses, was inconsistent and unbelievable. Petitioner claimed that he wrestled the gun away from Silva's right hand and fired the gun four to five times while standing next to the passenger side of the van. Yet, he provided no explanation for the bullet holes at the front of the van, in the windshield and dashboard. He provided no support for his contention that Silva was poised and ready to fire a gun that he held in his right hand, even though Silva was left-handed. His justification defense was further undermined by the testimony of Marilyn Sanchez, Maria Fernandez, and Rafael Fernandez, his own witnesses, who

each testified that Silva was, in fact, left-handed.

Here, the supplemental instruction could not have prejudiced Petitioner, since all the credible evidence disproved his justification defense beyond a reasonable doubt. Accordingly, Petitioner failed to establish the prejudice element of the ineffective assistance standard.

For the reasons stated above, the state court's determination that Petitioner received constitutionally effective assistance of counsel was not contrary to or an unreasonable application of *Strickland*. Accordingly, the petition is dismissed.

It is so ordered.